# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director*

January 15, 2008

*Southern District of New York*
John J. Byrnes
*Attorney-in-Charge*

**BY HAND & ECF**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street, Room 650
New York, New York 10007

    Re:    **United States v. Jose Ferreira**
              **07 Cr. 708 (RMB)**

Dear Judge Berman:

    I submit this sentencing memorandum on behalf of my client, Jose Ferreira, in advance of his sentencing, which is scheduled for January 29, 2008 at 10 a.m. On October 19, 2007, Mr. Ferreira pled guilty to illegally reentering the United States following his 1998 deportation to the Dominican Republic in violation of 8 U.S.C. § 1326(a) and (b)(2). For the reasons outlined below, including Mr. Ferreira's commitment to his family and his reasons for returning to this country, I respectfully ask the Court to sentence Mr. Ferreira to a period of twenty-months incarceration. Such a sentence would be sufficient, but not greater than necessary to meet each of the objectives of sentencing: punishment, deterrence, and rehabilitation.

I.    **Background**

    A.  **Life in the Dominican Republic**

    Jose Ferreira was born in the Dominican Republic in 1949. See Pre-Sentence Investigation Report (the "PSR") ¶ 31.[1] He was the second of six children born to Raul Ferreira and Maria Ceceres. Id. ¶¶ 43-44. When Mr. Ferreira was a child, his parents owned a farm in La Vega, a province of the Dominican Republic. On this farm, his family raised crops such as rice, plantains, and corn.

    For as long as Mr. Ferreira can remember, his father was a terrible alcoholic, who would get drunk three to four days a week. Whenever he drank, Mr. Ferreira's father would become belligerent and abusive. He got into drunken brawls with other men. He would also beat Mr. Ferreira, along with his mother and siblings. Mr. Ferreira remembers one drunken beating in

---

[1]    The cites to the PSR in this submission are to the draft PSR.

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 2

  **Re:** **United States v. Jose Ferreira**  
    **07 Cr. 708 (RMB)**

particular, from which he still bears scars on his leg. He and his siblings generally tried to keep out of their father's sight to avoid this kind of abuse.

  Because of the situation with her husband, Mr. Ferreira's mother was left to run the farm largely on her own. Mr. Ferreira and his siblings would regularly help on the farm, as there was so much work to do. Mr. Ferreira was about four years-old when he started to work on the farm, and he continued to work there throughout his childhood. At the same time, he was attending school, encouraged in this by his mother.

  Mr. Ferreira graduated from secondary school in Santo Domingo in 1972, when he was about twenty-three years old. See PSR ¶ 48. His education had been interrupted because of political problems in his country. The schools were shut down for approximately two years, as the result of a military coup which led to a brief civil war. Mr. Ferreira went home to his family's farm during this period, but he was later able to finish his education.

  Sometime after leaving school, Mr. Ferreira got a job at Vulcano, a company that manufactured lockers. Mr. Ferreira worked at Vulcano for many years. His job was in quality control and repairs, and he earned approximately 43 pesos a month. He was laid off from Vulcano in approximately 1988, and then he began working for himself, doing locker repairs. By that time, he had five children of his own to support.

  In the late 1970s, Mr. Ferreira was involved in a relationship with Olga Perez. Id. ¶ 40. In 1977, he and Ms. Perez had a daughter, Brianna Ferreira. Id. When Brianna was only three months old, Ms. Perez left Mr. Ferreira and moved to a different town. Although he did not know it at the time, Ms. Perez was already pregnant with their second daughter, Yudelky Ferreira, when she left. Id. After Yudelky was born, Ms. Perez brought the baby back to Mr. Ferreira, and since then, he has been responsible for the two girls. When they were little, he was the one who took care of them, acting as both a mother and a father. See Exhibit A (letter from Brianna Ferreira, noting that she first met her mother on her nineteenth birthday and emphasizing how devoted her father has always been to her and her sister); Exhibit B (letter from Yudelky Ferreira, explaining that her father has been "the best dad in the world, caring, a good communicator, loving, protecting, and responsible").

  In 1982, Mr. Ferreira married Pura Concepcion in the Dominican Republic. Id. ¶ 37. They had three boys together, but separated after approximately eight years of marriage. Id. Shortly after the divorce, Mr. Ferreira decided to move to the United States in search of better economic opportunities. Id. ¶ 36. His three boys continued living with their mother, while Mr. Ferreira paid two different families to look after his girls.

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 3

Re: <u>**United States v. Jose Ferreira**</u>  
**07 Cr. 708 (RMB)**

**B. Life in the United States**

After moving to New York, Mr. Ferreira found a job at a grocery store, where he worked for a couple of months. Then, he obtained a better paying job with a company called Angel Construction. <u>Id.</u> ¶ 51. At Angel Construction, Mr. Ferreira did sheet-rock work, painting, remodeling, and demolition. He saved up all that he could and sent the money back to the Dominican Republic for his children. Meanwhile, he also established a happy personal life for himself, marrying Yvonne Harper in the Bronx approximately one year after moving to New York. <u>Id.</u> ¶ 38.

Then, in approximately 1995, Mr. Ferreira was laid off from Angel Construction due to a downturn in the construction market. He could not find a comparable job and began having serious financial difficulties. While he was having these problems, he received word from the Dominican Republic that one of his sons was sick and in the hospital. He was told that his ex-wife, Ms. Concepcion, needed money for the boy's care.

It was during this period that Mr. Ferreira had his first experience with the criminal justice system. Desperate for money, he made the worst mistake of his life and got involved briefly in the drug trade. He got drawn in by a man he had just met and stupidly agreed to participate. Not long after, he was arrested for attempting to sell approximately two ounces of cocaine to an undercover officer. <u>Id.</u> ¶¶ 26-27. He was forty-seven years old at the time of his arrest and had never been arrested before. <u>Id.</u>

This conviction had far-reaching consequences for Mr. Ferreira, breaking up his family life. As a result of the conviction, he was deported to the Dominican Republic on March 8, 1998. <u>Id.</u> ¶ 9. This was particularly painful, as he had only recently been able to bring his two daughters to the United States in hopes that they would have a better life here. His sons had also moved to the United States by this time. As a result of his deportation, moreover, Ms. Harper decided to formally end their marriage. <u>See</u> Exhibit C (letter from Ms. Harper, explaining that she could not continue their marriage, as she knew that she would not be moving to the Dominican Republic with him).

**II. Offense Conduct**

Following his deportation, Mr. Ferreira tried to build a stable life for himself in the Dominican Republic. He got a job working in a warehouse for a construction company. He worked there for approximately three years, delivering materials and filling orders. Then, in 2001, Mr. Ferreira decided to return to the United States. He missed his children too much and

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 4

Re: <u>United States v. Jose Ferreira</u>  
07 Cr. 708 (RMB)

could not help support them with the little he was earning. He also missed his brothers and sisters, almost all of whom were living in New York.

Shortly after his return, Mr. Ferreira found a job at Sultan, Inc. ("Sultan"), a company in Yonkers, New York. He worked for Sultan doing construction and as a cabinet maker. He earned roughly $400 per week, which was much more than he was able to earn in the Dominican Republic. With this salary, he was again able to provide for his children. He was also overjoyed to be reunited with his extended family and was involved in a serious relationship with Catalina Arroyo, who has been his longtime companion. (A letter from Ms. Arroyo is attached as Exhibit D.).

In September 2006, approximately five years after his return, Mr. Ferreira was arrested in the Bronx on charges of driving while intoxicated.[2] See PSR ¶ 29. Although he was released on this case, the arrest caused Mr. Ferreira to come to the attention of the Bureau of Immigration and Customs Enforcement ("BICE"). Id. ¶¶ 7-8. As a result, he was arrested by BICE agents at his Bronx residence on July 10, 2007. Id. ¶ 8. On October 19, 2007, Mr. Ferreira pled guilty to illegally reentering the United States following his 1998 deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). He pled guilty pursuant to an October 2, 2007 <u>Pimentel</u> letter that calculated his Guidelines range as 41-51 months imprisonment, based on an adjusted offense level of 21 and Criminal History Category II. The Department of Probation has arrived at the same calculation. See id. ¶ 57.

### III. Sentencing Analysis

#### A. *United States v. Booker* and the New Sentencing Regime

As this Court is well aware, the Supreme Court's holding in <u>United States v. Booker</u>, 543 U.S. 220 (2005), substantially altered a district court's obligations with respect to its sentencing decisions. Before <u>Booker</u>, a sentencing court – absent extraordinary circumstances warranting departure – was required to impose a sentence consistent with the range contemplated by the Sentencing Guidelines. Now, the Guidelines range is just one of several factors set forth in 18 U.S.C. § 3553(a) that a sentencing court is to consider in determining the appropriate sentence. See <u>Booker</u>, 543 U.S. at 245-46; see also <u>Gall v. United States</u>, 552 U.S. __, 2007 WL 4292116, at * 12 (December 10, 2007) (emphasizing that "the Guidelines are only one of the factors to consider when imposing sentence"); <u>United States v. Crosby</u>, 397 F.3d 103, 111 (2d Cir. 2005)

---

[2] This case remains open. See PSR ¶ 29.

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 5

Re: **United States v. Jose Ferreira**  
     **07 Cr. 708 (RMB)**

("Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to 'consider' numerous factors acquires renewed significance.").

    In each individual case before it, the sentencing court must consider all of the § 3553(a) factors in determining what would be an appropriate sentence. Although the "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," the sentencing court "may not presume that the Guidelines range is reasonable." Gall, 2007 WL 4292116, at * 7. Instead, the court must make an "individualized assessment" based on all the facts presented. Id. The court may impose a non-Guidelines sentence in light of the other § 3553(a) factors, and it may vary a sentence from the Guidelines range "based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 552 U.S. __, 2007 WL 4292040, * 12 (December 10, 2007). On appeal, moreover, no presumption of reasonableness attaches to the sentencing range calculated by the Guidelines. See United States v. Fernandez, 443 F.3d 19, 28 (2d Cir. 2006) ("We . . . decline to establish any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable.").[3]

    Section 3553(a) directs the Court to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) makes clear that these purposes are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

---

[3] The United States Supreme Court has emphasized that "appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" Gall, 2007 WL 4292116, at * 6. Although appellate courts may consider the extent of a deviation from the Guidelines, the Supreme Court has recently rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Id. The Court has also rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Id.

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 6

Re: **United States v. Jose Ferreira**  
**07 Cr. 708 (RMB)**

(D)        to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The sentencing court is also directed to consider six additional factors: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentences and the sentencing range established in the Sentencing Guidelines; (4) the policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

**B.     The Seriousness of Mr. Ferreira's Criminal History is Overstated.**

The advisory Guidelines range of 41-51 months overstates the seriousness of Mr. Ferreira's criminal history. This overstatement is a basis not only for a non-Guidelines sentence under 18 U.S.C. § 3553(a) but also for a downward departure under U.S.S.G. § 4A1.3(b). Section 4A1.3(b) of the Guidelines provides as follows:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b).

In deciding whether to depart under § 4A1.3(b), courts have typically considered such factors as the defendant's age at the time of the prior offenses, the nature of the prior offenses, the length and scope of the defendant's criminal career, and the time between prior offenses. See, e.g., United States v. Shoupe, 988 F.2d 440, 447 (3d Cir. 1993) (including these factors as among those generally considered in a departure analysis under U.S.S.G. § 4A1.3). In United States v. Colon, 2001 WL 96367 (S.D.N.Y. February 2, 2001), for example, Judge Sweet granted a downward departure under U.S.S.G. § 4A1.3 (from criminal history category III to II) because the defendant's prior attempted drug sale was a first offense, was non-violent, took place when he was nineteen, and occurred when he needed to support his family without the benefit of a high school diploma. Id. at * 6; See also United States v. DeJesus, 75 F.Supp.2d 141, 144 (S.D.N.Y. 1999) (downwardly departing under § 4A1.3 where defendant's prior crimes were primarily non-violent

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 7

Re:   **United States v. Jose Ferreira**  
         **07 Cr. 708 (RMB)**

attempted narcotics sales, had resulted in no more than two years in jail, mostly took place when defendant was under 21, and defendant had new significant family responsibilities).

I respectfully submit that an evaluation of the factors typically considered under U.S.S.G. § 4A1.3 demonstrates that a downward departure is appropriate in Mr. Ferreira's case. As noted, Mr. Ferreira's criminal history category is based on a 1997 conviction for a non-violent drug offense, for which Mr. Ferreira served approximately one year in prison. Mr. Ferreira's arrest in this case represented his first contact with the criminal justice system, although he was forty-seven years old at the time. The arrest is now more than eleven years old and occurred during a brief and difficult period in Mr. Ferreira's life, when he was unemployed and desperately needed money to help his son. Since that time, he has sustained no additional convictions (other than the instant charge). Instead, he continued to work hard to support his family. All of these factors support a downward departure under U.S.S.G. § 4A1.3(b).

Given these circumstances, it is also particularly unfair that the illegal reentry guideline uses the 1997 offense to increase Mr. Ferreira's offense level by 16 points under U.S.S.G. § 2L1.2. The illegal reentry guideline makes this recommendation even though courts have traditionally viewed a person's criminal history as reflecting only the likelihood of recidivism (measured by the criminal history category under the Guidelines), but have not typically factored it into a measure of the seriousness of the offense of conviction (measured by the offense level under the Guidelines). Given the background of the 1997 conviction, we ask that the Court consider this over-representation of Mr. Ferreira's offense level in determining the appropriate sentence for him in this case.

C.   **Application of Additional § 3553 Factors**

As noted, the Sentencing Guidelines are now just one of several factors the Court must consider in determining what sentence is "sufficient, but not greater then necessary." 18 U.S.C. § 3553(a). We respectfully submit that an analysis of the various § 3553(a) factors supports a sentence significantly below the advisory Guidelines range in this case. We ask that the Court consider these factors – along with its own sense of what would constitute a fair and just sentence – in determining the appropriate sentence for Mr. Ferreira. See United States v. Jones, 460 F.3d 191, 195 (2d Cir. 2006) (noting that a sentencing judge may consider his or her own sense of what would constitute a fair and just sentence under all the circumstances, so long as all of the 3553(a) factors are taken into account).

First, Mr. Ferreira grew up in difficult circumstances with very few opportunities for advancement. His father was an alcoholic, who was extremely abusive towards the rest of the

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 8

Re: **United States v. Jose Ferreira**  
**07 Cr. 708 (RMB)**

family. In part because of the situation with his father, Mr. Ferreira began working on the family farm when he was only four years old. He was also forced to delay his education because of political instability in his country. Despite the circumstances of his childhood, as indicated in the letters from his siblings, he has always been extremely close to and supportive of his family. See Exhibit E (letters from Mr. Ferreira's sisters, Maritza Ferreira, Eugenia Ferreira, and Mayra Ferreira, on behalf of their brother). He has been extremely supportive of his sons and has made extraordinary efforts to raise his two daughters as a single parent. See Exhibits A & B (letters from Brianna and Yudelky Ferreira, describing how proud they are of their father and how much he has done to love and help them, as well as their half-brothers).

Second, Mr. Ferreira came back to the United States, because all of his children, along with most of his siblings, were here. He has tried his best since his return to work hard and take care of his children. He worked long hours as a cabinet-maker and used his earnings to support the children. Mr. Ferreira has also been involved in a steady relationship with Ms. Arroyo and before his arrest, had been helping her raise her four children. See Exhibit D (letter from Ms. Arroyo explaining how much he has supported her, as a single mother of four children, and describing him as "a very respectful, tender, loving man").

Third, Mr. Ferreira has also done his best in other ways to be a productive member of society. As attested in the accompanying letters from friends and family, he is a good person who has always tried to look out for others. See Exhibit F (letter from Enlly Paulino, Mr. Ferreira's niece, who describes Mr. Ferreira as a "father-figure" and as someone who has always been "family-oriented, excellent listener, motivated, driven, loving and caring individual"); Exhibit G (letter from Angel Dionicio, a friend of Mr. Ferreira's, emphasizing that he is a "loyal, unselfish, dependable person"); Exhibit H (letters from Damarie Brito, Katherine Segura, Luisa Concepcion, and Luis and Santa Castillo, all friends and relatives of Mr. Ferreira, explaining how kind and good-hearted he has been with them and how devoted he is to his family).

Fourth, in terms of the sentence that is necessary to achieve adequate deterrence, Mr. Ferreira is less likely than other offenders to recidivate. Now that he understands the consequences of his actions, Mr. Ferreira has no intention of returning to the United States. See Exhibit I (letter from Jose Ferreira, making clear that he will never again come to the United States). He understands how wrong it was for him to come back, and he is currently making plans for his new life in the Dominican Republic.

Fifth, I ask the Court to consider the time that Mr. Ferreira will likely be detained in immigration custody before he is deported to the Dominican Republic. This time is if anything,

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 9

Re: **United States v. Jose Ferreira**  
**07 Cr. 708 (RMB)**

even more difficult, given the condition of the immigration detention centers. Mr. Ferreira, moreover, will not be eligible to serve the last part of his sentence in a half-way house.

Finally, I ask the Court to consider the availability of "fast track" programs in deciding what sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing under 18 U.S.C. § 3553(a). A substantial percentage of federal districts currently have "fast-track" programs, which offer illegal reentry defendants the option of agreeing to a quick removal in exchange for a substantially reduced term of imprisonment. If Mr. Ferreira had been found in one of these districts – instead of in the Southern District of New York – he would face a much lower advisory Guidelines range. In certain districts, including the Central and Northern Districts of California, for example, participants in "fast-track" programs routinely receive a four level reduction in their offense levels.[4] With such a four level departure, Mr. Ferreira's Guidelines range would have been 27 - 33 months.

In United States v. Mejia, 461 F.3d 158 (2d Cir. 2006), the Second Circuit held that a district court is not required to compensate for the absence of a fast-track program on the grounds that the unavailability of such a program creates an unwarranted disparity under 18 U.S.C. § 3553(a)(6). In subsequent cases, however, the Court made clear that Mejia does not resolve the question of whether a district court may consider the lower sentences available in fast-track districts when determining, as required by the parsimony clause of § 3553(a), that the sentence imposed is "sufficient, but not greater than necessary." See United States v. Kingsley, 2006 WL 3826629, *1 (2d Cir. December 21, 2006). See also United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006) ("Plainly, if a district court were explicitly to conclude that two sentences equally served the statutory purposes of § 3553, it could not, consistent with the parsimony clause, impose the higher.") In a recent decision, United States v. Liriano-Blanco, __ F.3d __, 2007 WL 4302708, * 4 (2d Cir. December 11, 2007), the Second Circuit emphasized that its Mejia decision "did not foreclose the possibility that a court has the legal authority to impose, in its discretion, a non-Guidelines sentence" on the basis of fast-track disparity.

Accordingly, the Court may consider the availability of lower sentences in "fast-track districts" in determining what sentence is actually "sufficient" for Mr. Ferreira, "but not greater than necessary" under 18 U.S.C. § 3553(a). We ask the Court to consider this factor in combination with all of the other factors particular to Mr. Ferreira in deciding upon the appropriate sentence in this case.

---

[4] Under U.S.S.G. § 5K3.1, a court may grant a downward departure of up to 4 levels under a fast-track or "early disposition" program.

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York

January 15, 2008  
Page 10

Re:  **United States v. Jose Ferreira**  
**07 Cr. 708 (RMB)**

## IV. Conclusion

Mr. Ferreira is a devoted family man who returned to the United States to take care of his children and to be with his family. He made a terrible mistake in returning to this country, and he takes full responsibility for his actions. Given all of the circumstances of his case, particularly his efforts to be a responsible and productive member of society upon his return, a sentence of twenty months incarceration would be "sufficient but not greater than necessary" to achieve the purposes of sentencing in this case.

Respectfully submitted,

Fiona Doherty  
Attorney for **Jose Ferreira**  
Tel: (212) 417-8734

cc:  Randall Jackson, Esq.  
Assistant United States Attorney (by hand)

Jose Ferreira  
MDC - Reg. No. 12258-265 (by United States mail)